# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

AMAR BELL,

                              Plaintiff,

v.                                                           9:17-CV-850 (ATB)

J. NAPOLI et al.,

                              Defendants.

AMAR BELL, Plaintiff, pro se
AIMEE M. COWAN, Asst. Attorney General, for defendants.

ANDREW T. BAXTER
United States Magistrate Judge

## MEMORANDUM DECISION and ORDER

On April 10, 2018, this matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 38, 39). Plaintiff has filed this civil rights complaint alleging that on April 4, 2017, at Marcy Correctional Facility, defendants used excessive force against him in the course of extracting plaintiff from his cell. (Complaint ("Compl.") ¶ 6, Facts). Plaintiff originally named four corrections officers: J. Napoli, A. Farina, R. Rugari, and M. Music. (Compl. at 1). On September 18, 2017, defendant M. Music was dismissed by Order of District Court Judge David N. Hurd. (Dkt. No. 11).

Presently before the court is a motion for summary judgment filed by the remaining defendants, arguing only that plaintiff has failed to exhaust his administrative remedies. (Dkt. No. 48). Plaintiff has responded in opposition to the

motion, and defendants have filed a reply. (Dkt. Nos. 52, 54). Plaintiff filed an additional letter in support of his opposition. (Dkt. No. 55). For the following reasons, this court agrees with plaintiff and will deny the defendants' motion for summary judgment.

## DISCUSSION

I. **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## II.    Exhaustion of Administrative Remedies

### 1.    Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford*

*v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d).

There is a special section for complaints of "harassment." *Id*. § 701.8. Harassment grievances are defined in another section of the regulations as "those grievances that allege employee misconduct meant to annoy, intimidate, or harm an inmate." *Id.* § 701.2(e). Based on this definition, section 701.8 has been found applicable to claims of excessive force by staff. *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *7 n.7 (S.D.N.Y. Sept. 28, 2018) (citing *Torres v. Carry*, 691 F. Supp. 2d 366, 369-70 (S.D.N.Y. 2009)).

Complaints of harassment are handled by an ***expedited*** procedure which provides that such grievances are forwarded directly to the superintendent of the facility,[1] after which the inmate must appeal any negative determination to the CORC by filing a form within seven calendar days of the inmate's receipt of the Superintendent's response. *Id*.

---

[1] The regulation states that "[a]llegations of employee harassment are ***of particular concern to the administrators of department facilities.***" 7 N.Y.C.R.R. § 701.8 (emphasis added).

§§ 701.8(h) & (i), 701.5. The regulations then provide that "unless otherwise stipulated in this section, all procedures, rights, and duties pertaining to the processing of other grievances as set forth in section 701.5 of this Part shall be followed." *Id.* § 701.8(i). Thus, if a procedure is not described in 701.8, the inmate must refer to section 701.5.[2]

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 136 S. Ct. at 1857. "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, No. 15-3336-pr, 2016 WL 4572321, at *2 (2d Cir. Sept. 1, 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill*–availability and estoppel–are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and

---

[2] The court also notes that the regulations governing the Inmate Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id*. § 701.3(a) (Inmate's Responsibility).

"estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 2016 WL 4572321 at *2. An administrative procedure is "unavailable" when

> (1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860. Thus, if a plaintiff fails to exhaust his administrative remedies, the court must consider whether those remedies were "available" to him.

In *Williams v. Priatno*, 829 F.3d 118, 123-27 (2d Cir. 2016), the Second Circuit considered whether administrative remedies had been "actually available" to an inmate

6

plaintiff under *Ross*, after the district court granted the defendants' motion to dismiss for failure to exhaust. The plaintiff alleged that, while housed in the special housing unit ("SHU"), he drafted a grievance that he delivered to a correction officer to forward to the grievance office on his behalf. *Id*. at 120-121. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id*. at 121. He never received a response to his grievance, and alleged that it was never filed by the officer to whom he had given it. It was undisputed that plaintiff never appealed the grievance. *Id*.

The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id*. at 124. The defendants relied on a Department of Corrections and Community Services ("DOCCS") regulation that provided that "an inmate may appeal a grievance 'to the next step' if he does not receive a timely response." *Id*. (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2)).

The Second Circuit rejected this argument and held that, for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id*. The Second Circuit found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed . . . [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id*. Thus, *Williams* holds that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id*. at 126.[3]

---

[3] My summary of *Williams* tracks that of Magistrate Judge Stewart in *Berman v. Durkin*, No. 9:13-CV-136 (LEK/DJS), 2017 WL 1215814, at *8 (N.D.N.Y. Mar. 10, 2017), (Rep't-Rec.), *adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017).

7

*See also Medina v. Napoli*, 725 F. App'x 51, 53-54 (2d Cir. 2018) (following *Williams* in the context of a summary judgment motion).

    2.    **Application**

In this case, unlike *Williams*, it is undisputed that plaintiff filed a grievance regarding the alleged incident of excessive force. Defense counsel has filed the Case History and Record of the excessive force grievance. (Cowan Decl. Ex. B) (Case History and Record) (Dkt. No. 48-4). The case history indicates that, on April 18, 2017, plaintiff filed his grievance, claiming that the defendants used excessive force against plaintiff. (*Id.*) The case history further indicates that, on the same day, the grievance was "passed through" to the Superintendent. (*Id.* at 2). On May 16, 2017 the grievance was "passed through" by the Superintendent to the CORC. (*Id.*) Under the heading "Appeal to CORC," the document states that "Grievant states he wishes to appeal as passed through to CORC." (*Id.*) This notation is dated May 18, 2017. (*Id.*)

Thus, plaintiff brought a grievance and expressed his desire to appeal the grievance to both the Superintendent and the CORC, even though it is clear that no investigation was done at either the IGRC or the Superintendent level.[4] In fact, defendants have attached a letter from plaintiff to the Grievance Clerk of the IGRC, dated May 9, 2017, in which plaintiff observes that twenty days had passed without response by the Superintendent, and without an extension request from the Superintendent. Because of this, plaintiff stated that he wished to appeal his grievance

---

[4] The court understands that the incident took place at Marcy, and at the time of the appeal, plaintiff was at Five Points. Additionally, as stated above, complaints of employee "harassment" are handled by an expedited process whereby the grievance is passed through the IGRC, directly to the Superintendent. However, in this case, the grievance was additionally passed through to the CORC.

8

to the CORC. (Cowan Decl. Ex. B at 3). The last line of plaintiff's letter specifically states "I want my appeal sent on to the CORC." The plaintiff's letter is stamped "received" by the IGRC on May 12, 2017, and defendants do not dispute this fact. The letter also contains the initials "JB," with May 18, 2017, written next to the initials. (*Id.*) May 18, 2017 is the date that the other facility documents, and the receipt that plaintiff was sent in June of 2018, indicate that the grievance was "passed through" to the CORC. (Cowan Decl. Ex. B at 2; Seguin Decl. Ex. B at 1). The CORC received plaintiff's appeal on May 26, 2017. (Seguin Decl. Ex. A at 2).

It is also undisputed that the CORC had not rendered a decision when plaintiff filled this action on August 4, 2017, nor had the CORC rendered a decision by July 19, 2018, when Rachel Seguin signed her declaration, which has been filed as an exhibit in this case. (Seguin Decl. ¶ 10) (Dkt. No. 48-5). Rachel Seguin is the Assistant Director of the IGP, whose duties include being the custodian of records maintained by the CORC. (Seguin Decl. ¶¶ 1, 2). Although the CORC documents submitted by Rachel Seguin indicate that the "Sched Date" for the grievance was August 8, 2018, there is no indication, and defendants do not argue, that the grievance was ever addressed. (Seguin Decl. Ex. A at 1).

Thus, the CORC has failed to issue a decision or even investigate plaintiff's grievance from May 26, 2017 until at least August 8, 2018, and there is no indication that the CORC has ever addressed the grievance, even to the present day.[5] Although

---

[5] The court also notes that, though Assistant Director Seguin states that plaintiff's grievance was "denied," the grievance documents state that the grievance was "passed through" to the Superintendent and then "passed through" to the CORC. (Cowan Decl. Ex. B at 2). That notation is not a denial because the grievance was never investigated.

Assistant Director Seguin states that plaintiff was sent a "Receipt of Appeal" on July 6, **2018**,[6] it is clear from that receipt, that plaintiff's appeal was passed through to the CORC on May 18, **2017**, and the CORC received plaintiff's appeal on May 26, **2017**. (Seguin Decl. Ex. B).

Defendants argue that plaintiff did not exhaust his administrative remedies because he filed this federal action before the CORC issued a decision on his administrative appeal. Plaintiff does not dispute that the CORC has failed to issue a decision. This court has recommended dismissal for failure to exhaust when a plaintiff files his federal lawsuit before the CORC has decided plaintiff's appeal. *See Scott v. Miller*, No. 9:17-CV-520 (MAD/ATB) (Dkt. No. 54) (Rep't Rec. (6/25/18)) (adopted, Dkt. No. 56 (8/13/18). However, often, in such cases, the federal action was filed before the deadline for the CORC decision. *Id.* (Rep't Rec. at 9-10).

In this case, plaintiff waited from May 26, 2017 until August 4, 2017, with no response from the CORC, to file this action. The CORC has thirty days to decide an inmate's appeal or ask for an extension, which may only be granted with the "written consent of the grievant." 7 N.Y.C.R.R. §§ 701.5(d)(3); 701.6(g)(2). The regulations provide that if there is no timely response, for either the IGRC or the Superintendent's appeal, plaintiff may appeal to the "next step."[7] *Williams v. Priatno*, 829 F.3d 118, 124 (2d Cir. 2016) (citing 7 NYCRR §§ 701.6(g)(2), 701.8(g)). If the CORC received plaintiff's appeal on May 26, 2017, unless there was an extension of time, a decision

---

[6] (Seguin Decl. ¶ 9).

[7] Section 701.6(g)(2) specifically provides that, "[a]bsent [an] extension, matters not decided within the time limits may be appealed to the next step."

10

should have been rendered by June 26, 2017. Although the regulations specifically discuss what the "next step" is in cases of IGRC and Superintendent's review, it is less clear whether the language applies to the CORC, and if so, what the "next step is."

In *Williams*, the court found that the administrative remedies were "unavailable" because the regulations did not explain how an inmate should appeal a grievance that was never filed, because the time limits provided in the regulations for "appeal to the next step" did not apply when a grievance was never filed. In this case, there is no specific indication what the inmate must do if the CORC (the last step) received the appeal, but failed to render a timely decision, or any decision. The regulations do provide that if the plaintiff does not get a "receipt" from the CORC within 45 days of the date he filed his appeal, he should contact the IGP to make sure that his appeal was "received." 7 N.Y.C.R.R. § 701.5(d)(3)(i). Contacting the IGP could afford the CORC the opportunity to obtain plaintiff's appeal if the appeal had somehow failed to reach the CORC.

In *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:14-CV-124, 2016 WL 3661434, at *13 (N.D.N.Y July 5, 2016), Chief U.S. District Judge Glenn Suddaby held that plaintiff did not exhaust his administrative remedies because he failed to take further action under section 701.5(d)(3)(i) when he did not receive written notice of receipt by the CORC within 45 days of filing his appeal.[8] In *Gizewski*, the CORC did not receive the plaintiff's appeal for five months due to a "clerical error."

---

[8] The court notes that, unlike this case, in *Gizewski*, if plaintiff had contacted the IGP after 45 days, it would have been determined that the CORC had not received the appeal, and the defendants would have had the opportunity to cure the problem.

11

*Id.*

Although the Second Circuit affirmed Judge Suddaby's dismissal of Gizewski's complaint, the Second Circuit did not specifically decide the issue of inordinate delay by the CORC. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision,* 692 F. App'x 668 (2d Cir. 2017). The Second Circuit stated that "even if we assume arguendo that the long delay occasioned in part by clerical error constituted constructive denial," there was no genuine issue of material fact because the issues raised on that final administrative appeal to CORC pertained to requests for items that had already been provided to the plaintiff as part of a reasonable accommodation. *Id.* at 670.

In *High v. Switz*, No. 9:17-CV-1067, 2018 WL 3736794 (N.D.N.Y. July 9, 2018), (Rep't-Rec.), adopted, 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018), Magistrate Judge Daniel Stewart distinguished *Gizewski* and cited a split in the Second Circuit regarding whether a failure to respond by the CORC constitutes unavailablity under *Ross v. Blake*. 2018 WL 3736794 at *4-5 (citing cases). Magistrate Judge Stewart cited *Williams* and found that

> [s]imilarly, here, while the regulations at the preliminary stages contemplate a next step for a grievant to take in the event he does not receive a response, there is no direction on any action a grievant may take if he does not receive a response from CORC. Indeed, "the regulations give no guidance whatsoever" regarding what a grievant should do in this circumstance.

*Id.* at *5 (quoting *Williams*, 829 F.3d at 126). Magistrate Judge Stewart found that High's failure to exhaust aligned more with *Williams* than with *Gizewski*, because High had taken all the steps that he could regarding the status of his appeal, the CORC continued to ignore him, and although the CORC ultimately decided the appeal, it was a

12

year later, "after the motion to dismiss had been filed." *Id.* Judge Stewart made it clear that under "the hopefully unique facts of [that] case," plaintiff's failure to exhaust would be excused.

In *Rodriguez v. Reppert*, No. 14-CV-671, 2016 WL 6993383, at *2 (W.D.N.Y. Nov. 30, 2016), the court found that plaintiff's failure to exhaust should be excused in a situation somewhat similar to that in this case. In *Rodriguez*, plaintiff filed his appeal with the CORC, but the CORC did not decide the appeal within the thirty-day period required by DOCCS regulations. *Id.* at *1. Plaintiff in *Rodriguez* filed his complaint before the CORC issued a decision, and the CORC ultimately decided the plaintiff's appeal two weeks after the plaintiff filed his federal complaint, but nearly two months after the DOCCS regulations' requirement. *Id.* Magistrate Judge Roemer, recommended denying the motion for summary judgment, finding that the CORC's failure to decide the appeal, together with the absence of any mechanism to ask the CORC to issue a decision after thirty days elapsed, meant that the inmate's remedies were "unavailable." *Id.*

District Judge Richard Arcara adopted the Magistrate Judge Roemer's recommendation in *Rogriguez*, citing *Ross* and *Priatno*, stating that after the CORC neglected to decide Rodriguez's appeals within thirty days, administrative remedies were no longer available to him, and his only option was to file the federal action. *Id.* There was simply no more that the plaintiff could do to force the CORC to follow its own deadline for deciding an appeal. *Id.* The defendants belatedly raised the argument that the plaintiff should have contacted the IGP supervisor if he did not receive written

13

notice of the receipt of the appeal within 45 days. *Id.* at 2. The court did not consider the argument because it was not raised before the Magistrate Judge.[9] *Id.* The court cited *Williams's* holding that administrative remedies are "opaque," and therefore "unavailable - when those remedies do not address the situation in which a prisoner finds himself." *Id.* at 3. The regulations do not address a situation in which the CORC fails to render a decision within the deadline after receiving an appeal.[10]

In this case, there is no question that plaintiff's appeal was received by the CORC in May of 2017; however, it was neither investigated, nor decided. There is no evidence in the record of plaintiff contacting the IGP after 45 days,[11] although plaintiff testified at his deposition that he wrote to the CORC "multiple times." (Pl.'s Dep. at 133). Contacting the IGP would not have changed the situation in this case because the

---

[9] The court must point out that defendants in this case argued only that plaintiff failed to exhaust because he did not wait for the CORC's decision. They did not raise the argument that plaintiff should have written to the IGP supervisor if he did not receive a receipt for his appeal.

[10] Most of the cases cited by defendants predate *Ross*, and defendants' argument is based upon the absence of "special circumstances," which is no longer the appropriate analysis after *Ross*. However, defendants do cite a recent decision in their reply (Dkt. No. 54), written by Magistrate Judge Christian Hummel, in which he found that delay in the CORC decision does not constitute "unavailability." See *Berkley v. Ware*, No. 9:16-CV-1326, 2018 WL 3736791 (N.D.N.Y. July 6, 2018) (Rep't-Rec.), adopted 2018 WL 3730173 (N.D.N.Y. Aug. 6, 2018). The facts in *Berkley* are distinguishable from this case. Plaintiff in *Berkley* filed his federal action six days before the CORC ruled on his grievance, and the delay was five months. *Id.* at *6. Judge Hummel specifically distinguished a case in which the court held that administrative remedies were no longer "available" to a plaintiff who had been awaiting a decision from the CORC "for more than two years." *Id.* (citing *Henderson v. Annucci*, No. 14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016)). This facts in this case are more similar to *Henderson* than to *Berkley* in that the CORC has still not decided plaintiff Bell's grievance appeal more than 18 months after it received the appeal.

[11] Contacting the IGP to determine whether an appeal was received is not an "appeal." The IGP would only inform the plaintiff whether the appeal was received. If the appeal was not received, then presumably the plaintiff would resubmit his appeal. If the appeal was received, there is no further action contemplated.

14

response to plaintiff's inquiry would simply have been that the CORC did receive the appeal. The 30 days within which the CORC had to answer plaintiff's grievance would already have run without extension. That is essentially what happened in June of 2018 when plaintiff was told that the CORC received his appeal in May of 2017, and nothing further was done. Although according to the documents the grievance was "sched" for August 8, 2018, there is no indication that an extension was requested or consented to by the plaintiff. The regulations contain no instructions on how an inmate should proceed if the CORC continues to ignore him after he has been informed that his appeal was "received."[12]

The "next step" after the CORC may be a federal action. However, if the "next step" language does not apply to the CORC's decision, an inmate who never receives a decision from the CORC, after the appeal is filed, will be unable to exhaust his administrative remedies. In addition by ignoring an inmate's appeal, as it appears to have done in this case, the CORC could delay a plaintiff's exhaustion indefinitely,

---

[12] Plaintiff's deposition on this subject was unclear. Plaintiff stated that he appealed to the CORC, but after he filed the lawsuit, he received the printout of his grievance history, indicating that the appeal was sent to the CORC on May 18, 2017. (Pl.'s Dep. at 131-32) (Dkt. No. 48-3). Plaintiff states that he never got a receipt for the appeal, and he speculated that an IGP employee "falsified it and said she sent it and never sent it." (*Id.* at 132). It is unclear what plaintiff means by that statement, but he then states that "a couple of weeks later . . . , she sends me the appeal form from the Superintendent, with the current date on it. (*Id.*) Plaintiff was confused because the CORC was sent his appeal approximately one year earlier. (*Id.* at 133). Plaintiff also claims that he wrote to the CORC "multiple times," although there is no indication of any of these letters in the records. (*Id.* at 133). Defense counsel asked plaintiff if he filled out the appeal form that he was sent "in the last few weeks" before the deposition. (*Id.* at 134). Plaintiff first states that he filled out the appeal, but then hesitated, and wondered why he would fill out the form when the appeal was filed a year before with the CORC. (*Id.* at 135). It appears that DOCCS began sending plaintiff appeal forms, and "scheduling" the grievance after this lawsuit was filed. Although the court does not find that anyone "falsified" documents, it is clear that plaintiff's appeal was ignored for whatever reason.

making the remedy "unavailable" by thwarting plaintiff's attempt to exhaust.[13] *See Ross*, 136 S. Ct. at 1860 (administrative remedies are unavailable when "prison administrators thwart inmates from taking advantage of the grievance process by machination, misrepresentation, or intimidation"). In this case, unlike the plaintiff in *Williams*, plaintiff tried to appeal his grievance to the "next step," after the Superintendent level, but was not able to do so because the CORC appears to have ignored his grievance until after he filed the lawsuit, and it has apparently continued to ignore his grievance to this day. Thus, I find that plaintiff's failure to exhaust may be excused, and defendants' motion for summary judgment is denied.

This court must point out that my finding that the administrative remedy was "unavailable," and that plaintiff's failure to exhaust should be excused, is based upon a review of the specific facts in this case.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the defendants' motion for summary judgment based on plaintiff's alleged failure to exhaust (Dkt. No. 48) is **DENIED**.

Dated: December 11, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[13] The court must point out that *Ross* uses the term "prison administrators" in its analysis of unavailability, clarifying that it does not have to be one of the defendants who prevents plaintiff from using or completing the grievance process. 136 S. Ct. at 1860.